Mr. Walsh, do you have to retain three minutes for rebuttal? Yes, Your Honor. Please the court, I'm Robert Walsh representing Mr. Keith Roberts. Mr. Roberts is not here today. He is out of prison having been incarcerated for 42 months during the pendency of this matter. And this is a very troubling case due to circumstances that rather untoward I ended up arguing this case at the Seventh Circuit. Neither the District Court nor the Seventh Circuit gave any deference to the U.S. Court of Appeals for Veterans Claims. Mr. Roberts told them on many occasions through many motions which were quite artfully drafted that this matter was still pending over here and that he felt it was premature. He sort of argued exhaustion of administrative remedies which the District Court reminded him was under Title 18. It was a criminal proceeding and that was not the case. However, Mr. Roberts... This before us is the appeal from the Court of Veterans Claims. Right, right. And of course Mr. Roberts had raised... Can you state that please? Yeah, he had raised 42.1 and that set of regulations under the Program Fraud Civil Remedies Act. I'm having a hard time even understanding why that issue is before us. I mean there are... criminal jurisdiction exists and there was the right to pursue the criminal case. The criminal decision was entered and there is a restitution order. Are you saying that somehow that VA is not allowed to collect on that restitution order that was in the criminal proceeding because they were bound to pursue a civil remedy? They had an obligation to follow the Program Fraud Civil Remedies Act which has been in place for about 22 years now. And one of the preliminary matters is that they're supposed to run that through General Counsel and they're supposed to make a determination of whether or not it should go to an administrative law judge hearing before it goes over into the criminal side of the house. It goes over to the Department of Justice. But I'm not quite understanding the relationship. You're saying that the court had to wait until the application of the FCRPA or the application is clearly not applicable here within the terms and conditions of that act. I mean there's a specific exclusion there, right? Well, in this case and apparently since it appears from FOIA that the VA does hundreds of these criminal cases. During the pendency of this case they've done about 400 criminal fraud actions and they don't use the act at all. They don't use the Program Fraud Act at all. So they basically ignore it. So they make the argument that this jurisdictional argument on the monetary amounts, that's a step, a preliminary step that has to be taken by VA General Counsel. And the VA IG... I'm saying, I mean the act itself says that it doesn't intend and can't step on the criminal jurisdiction of the Attorney General. I mean it simply says that in the alternative the Attorney General chooses not to pursue this low-level type claim that there can exist a civil remedy. So they don't, there's no obligation to go through the civil remedy before the Attorney General can bring criminal charges. The Attorney General can bring criminal charges for $20,000 if they want. Right. And I am a former VA attorney and I have taken veterans who were getting 100% benefits up in front of U.S. magistrates and had them arranged straight away for assault or for robbery. But this is a benefits matter and when you have a benefits matter, Congress has addressed that and they've said, look, this is special. And if it's a Social Security beneficiary or a veterans beneficiary, there's a process. And that's the problem. I've put a lot of Social Security, I mean I've put a lot of people in jail for Social Security fraud. And you're saying that there's no jurisdiction to do that if they hadn't gone through a civil proceeding first? No, for instance, in the big RICO case where millions of dollars, where we found that they had 100 fraudulent cases. That's the type of case where, of course, justice is going to come in. They don't want to have an administrative law hearing of one of those 100 co-conspirators because that would blow the whole thing. But this, there were no edges and circumstances here. This was one veteran. They had already suspended his benefits. And so why the rush? Let's have due process. Let me ask exactly what it is you're asking us to do. Now, you're saying PFCRA is the vehicle. You're saying that therefore that restitution order, the criminal restitution order, is not enforceable and you want us to order to that effect? It's enforceable now if this court, Judge Hagel asked that in the first oral argument. What do you want us to do? Restore the man's benefits. He's perfectly entitled to his benefits. So now you're saying that's the other point. I'm saying there's two pieces of this. There's a restitution order that he's got to pay it back, and then the other question is can you sever benefits? So are you saying this PFCRA is a benefits severance vehicle? Because that's not even one of the available remedies under the Act. What happens after the administrative law judge has a hearing if you get that far? First of all, at the administrative law judge hearing, you arrive at the only place in Title 38 in the benefits side of the House where a veteran is entitled to a subpoena. There are 125 boxes of records out in the archives, and in one of those 125 bankers boxes, and we're waiting for the chief of naval operations in a FOIA to tell us the numbers, is Mr. Roberts' statement that he gave to the Navy. After this fatal accident. Had he been able to obtain that five years ago, we wouldn't be standing here today, because he would have demonstrated that he was there and he did participate in this accident rescue attempt. So that's the problem. That's the only place in Title 38. The other problem... I still am confused. I think this is just restating Judge O'Malley's question. What are you asking us to do here with respect to the restitution order? Are you asking that we do anything with the restitution order? You cannot. I would say that this court may order this remanded and that these benefits be restored. And at that point in time, Mr. Roberts would have to return to the district court and seek redress there. And the benefits be restored on what basis? Because they violated the statute by not going through this procedure that caps it at $150,000? On the basis that he met and is entitled to his PTSD benefits under 38 CFR 3.304F. Entitled, why? Because he didn't commit fraud? He didn't commit fraud. Despite the jury determination by proof beyond a reasonable doubt that he committed fraud? What basically happened, and you didn't want to talk about the criminal case, but what basically happened over there is they came in and they said a VA inspector general went in and testified at a grand jury and told them that, gosh, we took his benefits away, so he's off benefits now because we say he committed fraud. So they brought in a true bill. Well, you don't want us to relitigate what has gone through the district court. But they presented that to the jury, and there were motions in limine. There was a lot of motion practice. But that's all done. That's done. You've got your opportunity in court. Now, you're in a different forum. You're in a different aspect of trying to resolve a particularly difficult and complex issue. If you want to try to help us to understand what the issues are and what the relief would be available to you, Mr. Roberts, let's talk about that. Let's forget about the aspects of the criminalized and the restitution. Right. So what is the present status of this appeal? What are you appealing? This appeal is for the restoration of his service-connected disability benefits. And the legal theory is what? And that he meets all of the requirements under Title 38 and that his benefits were wrongfully terminated. Isn't that a factual finding, whether he committed fraud? It's a legal finding because you have to ‑‑this was similar to the first case today. He has PTSD. He doesn't have PTSD. He has 16. It's a medical determination. You have PTSD. He's on benefits for 10 years. By the way, you have to go back to federal court. No one testified in federal court he wasn't there that day. They said they couldn't recall. It was a flawed investigation. He never had his right of confrontation in the Title 38 in the VA forum. He never had an opportunity to address this evidence. In fact, he wasn't even given a copy of Mr. Vassell's report until he got to federal district court. Are you challenging the en banc determination of the Veterans Court as it relates to the applicability of CUE to a severance determination where fraud exists? That CUE determination of the board, if that's going to be the new standard for CUE, there are going to be thousands of veterans who are going to be very happy because this court has told me on two occasions that that's not the standard for clear and unmistakable error. We can't have two. You're down the road. The first question, okay, is does CUE even apply? Are you appealing that issue, their conclusion, the en banc determination that CUE doesn't even apply where fraud is an issue? It does not. All right, so you're not appealing that issue. Well, I'm saying CUE does not apply. Okay, so you say CUE doesn't apply, right? I don't think when an allegation of fraud has been made, this is my due process point. When you're alleging something which has penal consequences, at that time you've got to fall over into there's a heightened scrutiny here and a heightened need. There's the need for confrontation. This man was never even given a target letter. He's the complainant. Remember, he's a whistleblower. He goes to the IG. The IG interviews him the first time, and they do talk a little bit about what his complaint was. The second time the IG comes back, they put him in a room in the sheriff's department, and they abuse him and curse him and accuse him of fraud. Not in so many words, but where were you back in 1969? And he and his wife walk out, and she told him, they're not working on your complaint about Director Baker and shredding documents out of your file. This was bizarre. And so until he's arraigned, he never hears anything more about it. In this record, we have Veterans Benefits Administration employees who are involved in orchestrating a criminal complaint with Department of Justice employees while they're actively talking to this man, and he doesn't know that he's the target of a criminal investigation. I'm still just trying to sort out your legal theory, so you're not objecting to the determination below that Q doesn't apply. What you're saying is that everything had to go through the PFCRA. Is that right? That was the only vehicle. Well, if not the PFCRA, and they don't want to follow the structure that they adopted in 38 CFR 42, they're going to have to come up with something new because you cannot, in this tidal estuary between civil and criminal, you can't have mentally ill, unrepresented Veterans getting involved in, you've got Fifth and Sixth Amendment issues here that are profound, and you don't give them any notice this way. Was he represented by counsel in the criminal proceedings? Yes. He was. Was he represented at the appellate level? I argued the case there. I didn't brief it. You were not without counsel. Over on that side of the house. Competent counsel. But until his benefits were terminated at the board, he didn't have counsel, of course, in Title 38. Well, I think we're trying to mix apples and oranges, and we're trying to figure out what the proper resolution of this particular case is, and mixing the criminal side with the civil side is not the way to resolve it. So unless you have something else to proceed to help us try and resolve it, we'll listen to the other side, see if they can help us. Thank you. We'll restore two minutes of your rebuttal time. Thank you, Your Honor. Thank you. Thank you, Your Honor. May it please the Court. As this Court has already indicated, the issues before this Court are not related to the criminal conviction. The issues before this Court relate to the proper issues that this Court has jurisdiction to entertain. And in that connection, I'd like to start with saying that this Court does not possess jurisdiction to entertain Mr. Roberts' arguments that the board erred in severing service connection pursuant to Section 38 CFR 3.105D for two separate reasons. First, this Court lacks jurisdiction to entertain Mr. Roberts' challenges to Section 3.105D because the Veterans Court did not rely on Section 3.105D in reaching its conclusion. What the Veterans Court relied upon was its determination that there was fraud in this case and that fraud itself… That's right. …so I don't know why we're discussing it. But if the Veterans Court was wrong, then we would certainly have jurisdiction to analyze that issue and conclude that 3.105 should have been applied. Well, the Court would have to – well, the Court wouldn't actually have jurisdiction, Your Honor, and that's for two separate reasons. One is, since the Veterans Court didn't rely upon it, the Court would have to remand to the Veterans Court to have it address that issue, which it did not. Right, but we have jurisdiction to say they applied the wrong law. That's correct. That's correct. Right. But the Court wouldn't have jurisdiction to do the actual CUE analysis for another reason, and that's because it requires the application of law to fact, which the Court does not have jurisdiction to do. In other words, in determining whether or not the CUE standard was met by the RO and the board, you have to analyze the facts to the applicable law. Right, so assuming CUE applies… That's right. If the only issue was the factual determination of fraud, you're saying then we wouldn't have the authority to overturn it. Or even beyond that. That's absolutely right, but even beyond that, in determining whether or not clear and unmistakable error occurred, that's an application of the law of CUE to the facts in that particular case, which this Court doesn't have jurisdiction to entertain. Can I just ask you a question outside of all of these legal arguments? What's left in this case, just so I understand it? The CABC reversed the board on one of the issues, right? So there's still something left on remand? Your Honor, I think it's very, very important to understand where we are after this, because clearly the dissent, the Veterans Court dissent, did not understand that. There's two issues that remain. One is that the Veterans Court remanded Mr. Roberts' claim for dysthymia and depression based upon primary service connection. And that is if, upon remand, the RO or the board determined that he's entitled to service connection for those benefits, he gets them. Which gets to the second point, which… And you're not appealing that? No, no, certainly not. Okay. But even more important than that, and this is what the dissent did not understand at the Veterans Court. I would urge the Court to look at page A20 of the Veterans Court decision and the footnote there. It's footnote 10. And in that footnote, what the majority says is that the dissent incorrectly states that what we are doing in the majority is saying that because Mr. Roberts committed fraud, he forfeits his right to VA benefits. And the majority says that's specifically not what we're doing. That is evidenced by the fact that there's the remand for the dysthymia and the depression. What about the issue of the stressor? That's what I'm getting to. So are we just going to go through this all over again? I mean, you're going to go back and he's going to say, no, I had an alternative stressor, which was this incident. And then there's a whole new case that involves the adjudication of benefits. That's precisely what's addressed in this footnote, because what the majority says is that this stressor that he's now alleging, that he never alleged before until his story concerning the Holland incident and the fraud became undone, is something that Mr. Roberts is entitled to have heard the argument. And what is said in that footnote is that- So how does that play with the other finding with respect to reversing the board on the depression? I think they're virtually the same thing. They're just two separate claims. The remand was for the board to determine whether or not dysthymia and the depression was service-connected. The majority did not remand this other stressor issue like it did with the dysthymia and the depression, because that claim had never previously been raised with the VA. So what is said in that footnote is that- I actually thought under the record that he had raised that early on. He had not pursued it early on, perhaps. No. The dysthymia and the depression he had, he had never raised the alternative stressor. And that was the point with the board and the Veterans Court, that the first time he ever raised the theory that there could be, and I think I know where Your Honor is confused about, and I want to clarify that. But the first time he ever came out and said that this alternative stressor theory exists was before the board in connection with the severance proceedings. And his first response once the fraud came out was, well, it doesn't really matter that I committed fraud because it's enough as a matter of law that I was assigned to the same unit that Mr. Holland was. And once that was rejected, he then came up with the theory that there's an alternative stressor for PTSD. What I think, Your Honor, is confusing, and that I want to clarify, is the fact that this incident occurred in December of 1969 was well documented in the records. There's no question about that. That was the straightjacket incident. That's right. The straightjacket incident- And that would be the second stressor, the alternative stressor. That he's now claiming. That's right. The Holland incident occurred in February of 69. This was in December of 69. December of 69. Yes. You can see it was in the record. Oh, the event was in the record. What's missing in the record is any contention that that was a stressor upon which PTSD could be violated. That is clear. And, in fact, we have 9 or 10 psychiatric examinations that occurred between 1991 and 2003. And in none of those cases, when Mr. Roberts is before the psychiatrist, does he claim that this is a stressor. In fact, none of the psychiatrists even think about whether or not he has it because it wasn't a claimed stressor. But the court remanded specifically to determine whether or not that stressor needs to be taken into account. No. No. Very close to that, Your Honor. The court remanded the dysthymia and depression issue, but on this issue and that footnote on page A20, what the court said is that Mr. Roberts is free to file a claim alleging that he has PTSD based upon this claimed stressor. Effectively, the same thing. But that was the distinction that the majority made between the dysthymia and depression direct service connection claim and the PTSD claim based on this alternative stressor. And that was the basis for their remand. Well, the basis for the remand was the dysthymia and the depression. That was the basis for the remand. And also determine whether or not there was a separate stressor. Actually not, because he has to file a separate claim for that. That's what's addressed in the footnote. It isn't on remand because the claim has never been raised before. So that's a totally separate claim. That's right. That's distinct from this present claim. That's exactly right, Your Honor. I think that the case that was decided by this court on February 11 in Tarius makes that clear point. These are separate claims. In that case, he had the same disability, which was a lung disorder. And there were two separate claims as to the cause of it. And this court said in that case that these are separate claims. That's exactly what we have here. Theoretically, he could get an award of benefits back to the original date? Yes, he could, Your Honor. So he's just getting the same benefits back that he was ordered to pay in restitution in the criminal proceedings? Theoretically. Now, I would caution the court in understanding this, that this incident was known since 1969, and no psychiatrist who's ever seen Mr. Roberts has ever said that that is a possible basis for PTSD. But now you're arguing the facts of the case and the merits. Absolutely, Your Honor. I'm simply trying to talk about the possibility that that's what happened. But if he files the claim as suggested in the footnote, he files a new claim, is he going to be able to get back to, I mean, I thought, isn't he limited to like one year before the filing of the claim or something? Well. Couldn't go back to the early 90s or 69 or whatever. That's a real issue, Your Honor. And under 5110, Your Honor's absolutely right, you're limited to the date the claim was filed or one year earlier. But I suppose Mr. Roberts and his counsel could argue that, you know, there's some informal claim on the record or something else that constitutes it. But Your Honor is right. The effective date will be an issue as to whether it can go all the way back. And unless the court has any further questions, I would simply ask that the decision below be affirmed. Thank you, Mr. Roberts. Thank you. Mr. Walsh. If it please the court, our brief, our opening brief at page 25 and 26 has a table. And the record is replete with circumstances in which the 1969 December stressor was, in fact, discussed by VA clinicians. And it was actually what he talked about first. He does have the right to file another claim on it. But, again, this is what clogged up the system with all these, you know, do-overs. Also, of course, he will, under 38 CFR 3.156C, if he can get the records out of the National Archives, he'll have a federal document which should have been in the record. So that would reopen it to the date of his original claims. However, one of the 3.155. In your opinion, what was the remand that was undertaken by the court then? It is specifically targeted at the dysthymia. And also in the damage calculation, there was not a damage calculation, unlike Social Security, when they come to district court, they wrap it up for you, they give you a clean number. VA never calculated a number. There was never an administrative finding as to the restitution that they were seeking in federal court. So that was done at sentencing by somebody from the regional office. They asked for a million dollars plus, and she pointed out that not only was the number, the $300,000 or something erroneous, but that his pension benefits continued so that then his pension of about $1,000 a month had to be offset from the, you know, $3,000 round number is 100%. So that calculation was done. We talked about that in briefing, is that that calculation, that's part of the Program Fraud Act, that's part of that process that's missing, that you need to give a handoff to justice of a clean number. He never had an opportunity to bring any facts in or argue those damage and restitution numbers in the VA forum, and that's all part of this criminal process. And that's where we're saying there's due process issues here, there's process problems. 3.105D, for the past 22 years since the Program Fraud Act came in, is that point at which you implement the decision of the administrative law judge. If the administrative law judge hands down a finding that there, in fact, has been fraud, then you will get from the ALJ a determination of damages, a clean number, and they'll talk about which benefits, you know, need to be terminated. And that's what's missing in all of this, is we haven't had that due process opportunity. If, in a case like this, where they argue that the damage is outside the statute, and we're not conceding that, but if that were the case, it seems to me that the VA has got to find a similar due process avenue, in other words, still give them the ALJ hearing, because you've still got to calculate damages, you've still got to give them access to subpoena power to get those government documents that prove that he was there. Thank you, Mr. Walsh. Thank you. Case is admitted.